CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUL 27 2006
JOHN F. CORCORAN, CLERK
BY: /s/ HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES M. KEYES, <br> Plaintiff, | Civil Action No. 7:06-cv-00437 |
| v. | MEMORANDUM OPINION |
| TERRY O'BRIEN, et al., <br> Defendants. | By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Plaintiff James M. Keyes, brings this against federal officials pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), with jurisdiction vested under 28 U.S.C. § 1331. Keyes alleges that the defendants subjected him to cruel and unusual punishment by refusing to house him in a single man cell and then in subsequently placing him in a holding cell in the Special Housing Unit. As relief, Keyes seeks $ 57,000 in damages. Upon review of the record, I conclude that the plaintiff has not stated a claim upon which relief can be granted and, therefore, dismiss the complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

## I.

Keyes complains that in February, 2005 he arrived at the United States Penitentiary, Lee County ("USP Lee") and was placed in a two man cell, but did not have a cell mate. However, on August 8, 2005, Keyes was advised that he was going to be transferred to another cell and would be assigned a cell mate. Keyes alleges that he informed correctional personnel that due to "psychological reasons" he could not have a cell mate and physically resisted being removed from his cell and placed in another cell. Because of his resistance, Keyes was temporarily placed in a holding cell with allegedly inadequate shower and restroom facilities.

On August 10, 2005, Keyes claims he was removed from the holding cell, and was placed alone in a two-man cell. However, on August 11, 2005, he requested that Marcus Jones be assigned as his cell mate and, later that day, Jones was reassigned to the same cell. Keyes immediately began complaining to correctional personnel and "forewarn[ed]" the defendants that he was concerned that Jones might attack him or he might attack Jones, even though he admits that Jones was "the son of a good friend" and does not claim that Jones ever threatened him nor that Jones had a propensity for violence. Thereafter, Keyes made repeated requests to be assigned a single man cell or be placed into protective custody, but his requests were denied.

On September 23, 2005, while Jones was asleep, Keyes "pound[ed] Jones with punches." Immediately after assaulting his cell mate, Keyes was taken to the Special Housing Unit ("SHU"), but again he physically resisted being placed into a cell with another inmate. Accordingly, correctional employees placed him in hand and leg restraints attached to a belly chain, and put him in a holding cell which, unlike the other cells in the SHU, had no in-cell restroom or shower facilities. Keyes was released from ambulatory restraints approximately 30 hours later, and was provided with clean sheets and clothing. Keyes remained in the holding cell for 27 days, and alleges that during that time, because there were no restroom or shower facilities, he was required to use a "urine bottle" and "bed pan," had no in-cell showers or opportunities to wash his hands, and lost "approximately" 25 pounds. Keyes also complains that his personal property and hygiene items, including legal materials, were withheld while he was in the SHU. However, Keyes does not allege that he was denied food, medical care, or recreation opportunities, nor does he allege that he suffered any actual ill effects due to his temporary placement in the SHU.

2

## II.

A petition may be dismissed under 28 U.S.C. § 1915A(b)(1) if it is clear from the petition that the plaintiff is not entitled to relief. To state a cause of action under Bivens, a plaintiff must establish that he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988).

## I.

Although the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). As a result, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must demonstrate that the living conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501 U.S. 294 (1991). Additionally, the plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). While having a cell mate or being placed in a holding cell with limited personal belongings, restroom, and shower facilities, may be inconvenient and unfortunate, Keyes has not alleged anything to suggest that these conditions violate contemporary standards of decency. See Shakka

3

v. Smith, 71 F.3d 162, 168 (4th Cir. 1995)(finding that merely being denied running water and/or the opportunity to shower for a period of days does not constitute a deprivation of constitutional magnitude). Further, although Keyes complains that he lost weight while housed in the holding cell, he does not allege that his weight loss was unintentional, that he actually became ill due to the conditions of which he now complains, nor that there were any lingering effects on his health. Further, as he concedes that he was provided with ample food and does not claim that he was denied medical attention during this period, I can find no support for his contention that merely a lack of in-cell shower and toilet facilities caused him to lose weight. Therefore, I find that Keyes has not alleged current or future injury and, thus, fails to state a claim under the Eighth Amendment.

Moreover, although Keyes complains that twice he was placed in a cell with inadequate restroom and showering facilities, he concedes that on both occasions he physically resisted being placed into a cell with those amenities because he would then be required to have a cell mate. Keyes does not allege any facts which reasonably suggest that he was actually in any danger if he was placed in a cell with another inmate. Rather, he complains only that he should not be exposed to such inmate's "self destructive conduct." As an inmate has no right to choose to have a single cell, I find that Keyes' unreasonable refusal to be placed into a multi-inmate cell resulted in his temporary incarceration in a cell with less comfortable amenities.

## II.

To the extent Keyes alleges that he was subjected to excessive force by being restrained with hand and leg restraints attached to a belly chain for thirty hours, it fails. To establish an

4

Eighth Amendment excessive force claim, an inmate must satisfy a two-pronged standard comprised of both an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation) and a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind). Williams v. Benjamin, 77 F.3d 756, 761 (4th 1996).

The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 32-21 (1986)). The Supreme Court and the Fourth Circuit have set out the following factors to consider in determining whether a prison official acted maliciously and sadistically: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (1992) (quotations omitted); Williams, 77 F.3d at 762. Also, the inmate must prove the correction official's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.2d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir.

5

1994). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." In Norman v. Taylor, the Fourth Circuit stated:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

25 F.3d at 1263, n. 4 (citations omitted).

Although Keyes complains that he was restrained for thirty hours by hand and leg restraints attached to a belly chain, he does not allege he suffered any actual injury as a result of the restraint, thus any injury is de minimis and does not amount to a constitutional violation. Furthermore, Keyes has failed to allege any facts which establish those extraordinary circumstances on which a plaintiff can prevail on an excessive force claim when he suffers only de minimis injury. Merely a lack of due care for the prisoner's interests and safety fails to show the use of force which is "repugnant to the conscience of mankind." See Whitley v. Albers, 475 U.S. 312, 319 (1986)(finding that the infliction of pain in the course of a prison security measure, does not amount to cruel and unusual punishment simply because it may appear in retrospect that

6

the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense). Keyes concedes that immediately prior to his placement in ambulatory restraints he violently attacked his sleeping cell mate and physically resisted correctional officers efforts to restrain him and place him in another cell. Further, Keyes does not allege that he was unable to move, stand, lay down, eat, and/or utilize the restroom because of those restraints. Accordingly, I find that correctional officers utilized a reasonable amount of force in restraining Keyes and leaving him in restraints until he remained peaceable and, thus, find he fails to state a claim of constitutional magnitude.

### III.

Based on the foregoing, I find that Keyes has not presented any claims that constitute a violation of his constitutional rights. Therefore, I dismiss the complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this Memorandum Opinion and accompanying Order to plaintiff and to counsel of record for the defendants, if known.

**ENTER:** This 27th day of July, 2006.

Senior United States District Judge

7